```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ICONIX BRAND GROUP, INC. and IP         :
HOLDINGS, LLC,                          :
                      Plaintiffs,       :
                                        :       06 Civ. 8195 (DLC)
           -v-                          :
                                        :       OPINION and ORDER
BONGO APPAREL, INC. and TKO APPAREL,    :
INC., and DOES 1-50,                    :
                      Defendants.       :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiffs Iconix Brand Group, Inc. and IP Holdings, LLC:
James T. Smith
Brian S. Paszamant
Jeremy L. Reiss
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174

For Defendants Bongo Apparel, Inc. and TKO Apparel, Inc.:
Robert Zarco
Robert F. Salkowski
Mikhael Ann Buchanan
Zarco Einhorn Salkowski & Brito, P.A.
100 S.E. 2nd Street, Suit 2700
Miami, FL 33131

Malcolm I. Lewin
Ethan R. Holtz
Morrison & Cohen
909 Third Avenue
New York, NY 10022

DENISE COTE, District Judge:

Plaintiffs Iconix Brand Group, Inc. ("Iconix"), a Delaware clothing design company, and IP Holdings, LLC ("IPH"), its

wholly-owned subsidiary, bring this diversity action against TKO Apparel, Inc. ("TKO"), its subsidiary Bongo Apparel, Inc. ("BAI"), and various unnamed defendants (the "Doe Defendants," and with TKO and BAI, the "Defendants"). The amended complaint brings claims for breach of contract, negligence, trademark infringement and dilution, constructive fraud, and conspiracy to commit fraud against BAI and TKO. The amended complaint also asserts a claim of aiding and abetting against the Doe Defendants.

On March 28, 2008 the Defendants moved to dismiss the amended complaint. Plaintiffs filed their opposition on April 11; there was no reply. For the following reasons, the motion is granted with respect to count 9 of the amended complaint, and denied in all other respects. In addition, as discussed below, Counts 11 and 14 have been withdrawn to the extent that they are alleged on behalf of Iconix.

BACKGROUND

The following facts are drawn from the amended complaint and assumed to be true for the purposes of deciding the motion to dismiss.[1] In 2004, plaintiffs Iconix and IPH entered into negotiations with defendant TKO, an apparel manufacturing

---

[1] Attached to the amended complaint are the documents referred to herein as the License Agreement, the Guarantee, the Men's License Agreement, and the Settlement Agreement.

2

company. These discussions related to the "Bongo" brand of jeans wear (also referred to herein as the "Licensed Mark"), the license for which was then held by Unzipped Apparel, Inc. ("Unzipped"), a wholly-owned subsidiary of Iconix. Unzipped was managed by Hubert Guez ("Guez") and Sweet Sportswear LLC ("Sweet"), both non-parties to the present case. The amended complaint states that Iconix and IPH were seeking out a new licensee because they were dissatisfied with Guez's and Sweet's management of the Bongo brand.

On June 9, 2004, IPH and TKO's wholly-owned subsidiary, TKO Apparel Licensing, Inc. ("TKO Apparel"), executed a license agreement granting TKO Apparel the exclusive right, with some exceptions, "to use the Licensed Mark ["Bongo"] in connection with the design, manufacture, sale, marketing, distribution, advertising and promotion" of women's jeans wear, bottoms, and active wear throughout the United States (the "License Agreement"). The License Agreement, which became effective on August 2, 2004 for a period ending December 31, 2007, gave TKO Apparel an option to renew the agreement for two three-year terms, and required it, inter alia, to meet minimum net sales targets, to pay royalties based on a percentage of its sales (or, in the alternative, certain minimum royalties), and to remain adequately capitalized.

On September 21, 2004, IPH entered into a management agreement with TKO's newly formed subsidiary, BAI (the "Management Agreement"). Pursuant to the Management Agreement, IPH paid BAI approximately $750,000 for it to manage the transition of the Bongo license from Unzipped to BAI, and to bring products to market that were already in the distribution pipeline. Plaintiffs allege that the payment made to BAI under this agreement was made necessary when BAI/TKO Apparel[2] failed to do "what it should have already been doing" under the License Agreement, namely, "preparing to take over operations for BONGO jeans wear" from Unzipped.

In November 2004, TKO Apparel assigned the License Agreement to BAI. As a condition to the assignment, TKO executed a guarantee dated November 11, 2004 (the "Guarantee"), which guaranteed BAI's obligations to IPH under the License Agreement. Iconix and BAI also entered into a stock purchase agreement that permitted TKO to purchase one million shares of Iconix stock at a discounted price of $2.20 per share.

In late 2004, Iconix and IPH approached TKO to discuss the expansion of the Bongo product line into the men's wear market. On December 15, 2004, IPH and BAI executed a license agreement

---

[2] The amended complaint refers to the actions taken by TKO Apparel prior to its assignment of the License Agreement to BAI as the actions of BAI itself. Thus, it is not apparent whether the activity referred to in this paragraph should be attributed (for the purposes of this motion) to TKO Apparel or BAI.

("Men's License Agreement"), which contained substantially similar terms as the prior License Agreement.

Plaintiffs allege that soon after the execution of the License Agreement, BAI began to threaten IPH with a claim under the License Agreement based on difficulties related to the transition between Unzipped and BAI, and to press IPH for a reduction in BAI's minimum sales and royalty obligations.[3] Plaintiffs also allege that BAI was "wholly unprepared to perform its obligations under the License Agreement," and that, as a result, Unzipped had lost approximately $8 million by January 2005.

In an effort to resolve these and other issues, Iconix, IPH, and BAI executed a settlement agreement on August 26, 2005 (the "Settlement Agreement"). Under the terms of the Settlement Agreement, Plaintiffs paid BAI a lump sum of $735,000, issued BAI and its principals 200,000 warrants to purchase Iconix stock, reduced the minimum net sales and royalty payment requirements under the License Agreement, and extended the due date for the first-year of royalty payments due under the Men's License Agreement.

---

[3] Section 5.3 of the License Agreement provides that if certain problems arise in connection with the transition of the Bongo brand from Unzipped to BAI/TKO Apparel, "a fair reduction in Minimum Net Sales will be discussed."

5

Plaintiffs allege that, despite these concessions, BAI notified IPH of its intent to terminate the License Agreement in May 2006, and that this termination became effective on July 13, 2006. Plaintiffs also allege that BAI continued to sell products bearing the Bongo mark after it terminated the agreements without paying any royalties.[4]

BAI filed a complaint against Iconix and IPH in New York State Supreme Court on June 12, 2006. IPH and Iconix moved to dismiss. While that motion was pending, this action was filed by IPH and Iconix on October 6, 2006. BAI and TKO, in turn, filed a motion to dismiss this action, arguing that this Court should abstain from jurisdiction in light of the pending state action. Following a conference with the parties, the motion to dismiss was denied by Order dated January 4, 2007, and this action was stayed.

On January 2, 2008, IPH and Iconix's motion to dismiss the state court action was granted in its entirety with respect to nine claims and was granted to the extent that the allegations were made against Iconix with respect to four of the remaining claims.[5] Following the receipt of status letters from the plaintiffs dated January 4 and January 14, 2008, regarding the

---

[4] Plaintiffs allege that BAI also "reneged on . . . the Men's License Agreement."

[5] One additional cause of action was subsequently withdrawn by BAI.

state court proceedings, a conference was held with the parties on February 29, and the stay of this action was lifted. The amended complaint was filed on March 7, and the instant motion to dismiss was filed on March 28.

DISCUSSION[6]

I.  Rule 8(a)

Defendants' first contention is that plaintiffs' amended complaint must be dismissed in its entirety under Rule 8(a), Fed. R. Civ. P., because it is "a jumbled, 204 paragraph, shotgun pleading" in which all 19 counts incorporate each preceding paragraphs, thereby rendering the complaint "utterly confusing." This argument may be swiftly rejected. Under the pleading standard set forth in Rule 8(a)(2), complaints must include a "short and plain statement of the claim showing that

---

[6] As a preliminary matter, plaintiffs maintain that Defendants' motion to dismiss is barred under Rule 12(g) of the Federal Rules of Civil Procedure. It is well-established, however, that "the defense of failure to state a claim is not waivable." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001); see also Wright & Miller, Federal Practice and Procedure § 1361 (5th ed. 2007) (discussing Rules 12(g) and (h) and noting that Rule 12(g)'s waiver mechanism "does not apply to defenses under Rules 12(b)(1), 12(b)(6), and 12(b)(7)"). Thus, to the extent that Defendants' motion is brought pursuant to Rule 12(b)(6), it shall be construed as a motion for judgment on the pleadings under Rule 12(c), and is not barred by Rule 12(g). In light of the disposition of the Defendants' motion, discussed below, plaintiffs' Rule 12(g) argument with respect to the balance of the Defendants' motion is moot.

the pleader is entitled to relief." "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006). Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005).

Upon review, plaintiffs' amended complaint clearly satisfies the standard imposed by Rule 8(a). It is not "confusing" and is not drafted in a manner that gives rise to an inference of bad faith. Moreover, it must be noted that the incorporation of preceding paragraphs into subsequent causes of action is a standard practice, specifically permitted by Rule 10(c), Fed. R. Civ. P. Defendants' argument on that issue is frivolous.

B. Rule 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading

as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). A court must apply a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (citation omitted). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

1.  Breach of Duty of Due Care

Plaintiffs allege that BAI "had a legal duty (distinct from its contractual obligations) to act in a reasonable manner while selling products bearing the Licensed Mark so as not to cause damage" to that mark, and further allege that this duty was breached when BAI "acted negligently in dealing with retailers . . . by, inter alia, failing to timely ship orders made by retailers." Defendants argue that this claim must be dismissed because, first, plaintiffs do not allege a violation independent of BAI's contractual obligations, and second, even if there is a

basis in tort for plaintiffs' negligence claim, their claim is barred by New York's economic loss rule.

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389, (1987); see also Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 899 (2d Cir. 1980). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." Clark-Fitzpatrick, 70 N.Y.2d at 389. For example, "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship," as is the case with "[p]rofessionals, common carriers and bailees." Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 551 (1992). In sum, "[i]f the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort. But if in addition there is an interest in protecting the plaintiff from other kinds of harm, the plaintiff may recover in tort whether or not he has a valid claim for breach of contract." Hargrave, 636 F.2d at 899 (citation omitted).

Plaintiffs' claim that BAI breached a duty of due care must be dismissed under these standards. Plaintiffs acknowledge in opposition that "[m]erely charging a breach of a 'duty of due care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim," Clark-Fitzpatrick, 70 N.Y.2d at 390, but that is precisely what the plaintiffs appear to have done here. Although they emphasize that they "have properly pleaded the violation of a 'legal duty independent of the contract itself,'" neither their opposition nor the amended complaint identifies a potential source of such a duty. Moreover, the sole example cited of the breach of the alleged duty -- the failure to deliver products to retailers in a timely fashion -- is covered by a specific term in both the License Agreement and Men's License Agreement: Section 4.1 of each agreement provides that the "Licensee shall use its best efforts to ship all orders for Articles by the date promised."[7] Finally, it may also be noted that there is nothing in "the nature of the injury, the manner in which the injury occurred and the resulting harm" alleged here to indicate that tort remedies (as opposed to contract remedies) are necessary or particularly appropriate here.

---

[7] Section 1.4 of both agreements also provides, more generally, that the "Licensee shall use its best efforts to exploit the rights herein granted . . . and to sell: (i) the maximum quantity of Articles consistent with the high standards and prestige associated with the Licensed Mark."

11

Sommer, 79 N.Y.2d at 552.[8]  Defendants' motion to dismiss count 9 of the amended complaint is therefore granted.

    2.    Fraudulent Transfer Claims

Defendants argue that (1) plaintiffs' claims under New York's Debtor and Creditor Law Sections 273, 274, and 275 (counts 15, 16, 17 and 18 of the amended complaint), are legally insufficient because the laws of Florida, and not New York, apply to those claims, and (2) that these claims, along with the aiding and abetting claim against the Doe Defendants (count 19) must be dismissed because they do not satisfy the heightened pleading requirements imposed by Rule 9(b), Fed. R. Civ. P. Through these claims, plaintiffs generally allege that TKO and BAI, who had become creditors of the plaintiffs due to the conduct described above, ceased business operations and liquidated their assets by transferring them to the Doe Defendants, in violation of New York law.

First, Defendants' brief choice-of-law argument is based entirely upon the following false premise: that because BAI and TKO are both incorporated in Florida, "any property that they may own" is also located in Florida.  This assertion both raises

---

[8] See also id. ("[T]he injury . . . was not personal injury or property damage; there was no abrupt, cataclysmic occurrence; and the harm was simply replacement cost of the product.  Thus, where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory.")

12

a factual issue that is inappropriate for resolution at this stage -- i.e., where the property referred to in counts 15 through 18 is located -- and fails as a matter of law and logic, as it is beyond dispute that not all of an entity's property is necessarily located (or should be deemed to be located) in the state of that entity's incorporation.[9]

Second, Defendants' Rule 9(b) argument regarding counts 15 through 19 likewise fails. Counts 15, 16, and 17 assert causes of action for fraudulent conveyance pursuant to Sections 273, 274, and 275 of New York's Debtor and Creditor Law. It is well established, however, that Rule 9(b)'s heightened pleading requirements do not apply to claims under these provisions. See generally Feist v. Druckerman, 70 F.2d 333, 334 (2d Cir. 1940); see also Drenis v. Haligiannis, 452 F. Supp. 2d 418, 428 (S.D.N.Y. 2006) (citing cases). See generally In re Sharp Intern. Corp., 403 F.3d 43, 53 (2d Cir. 2005) (noting that these provisions concern "constructive fraud"). By extension, the

---

[9] In any event, the plaintiffs would appear to have the better of the choice-of-law issue at this stage. See, e.g., Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co., 375 F. Supp. 2d 257, 268 (S.D.N.Y. 2005)(finding that New York law "would clearly be chosen" to apply to fraudulent conveyance claims where the plaintiff/creditor is a New York domicillary); see also HBE Leasing Corp. v. Frank, 48 F.3d 623, 634 (2d Cir. 1995) (noting that New York's fraudulent conveyance law "is a set of legal rather than equitable doctrines, whose purpose is . . . to aid specific creditors who have been defrauded by the transfer of a debtor's property"). Defendants are entitled, however, to raise this issue in any motion for summary judgment or at trial, where their factual claims can be appropriately considered.

13

allegation of conspiracy to violate these provisions (count 18), is not subject to Rule 9(b). See generally Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990); see also UFCW Local 174 Commercial Health Care Fund v. Homestead Meadows Foods Corp., No. 05 Civ. 7098 (DLC), 2005 WL 2875313, at *2 (S.D.N.Y. Nov. 1, 2005) ("A claim for conspiracy to commit a tort is recognized in New York to the extent that the plaintiff well pleads the underlying tort."). Finally, Rule 9(b) does not apply to the claim against the Doe Defendants for aiding and abetting the alleged fraudulent transfers (count 19). Stating such a claim requires allegations of actual knowledge and substantial assistance, cf. Design Strategy, Inc. v. Davis, 469 F.3d 284, 303 (2d Cir. 2006) (discussing claims for aiding and abetting breaches of fiduciary duty), but the inclusion of those elements does not itself render the claim one sounding in fraud (and thus subject to Rule 9(b)) where the underlying claim (as here) does not sound in fraud. See generally Rombach v. Chang, 355 F.3d 164, 172 (2d Cir. 2004) (noting that a claim is subject to Rule 9(b) where its "wording and imputations . . . are classically associated with fraud"). Thus, all of these claims are subject to Rule 8(a)'s more liberal pleading requirement, and there is no argument that plaintiffs' pleadings fail to meet that standard.

3.  The Trademark Claims

Plaintiffs assert federal and common law trademark infringement claims against BAI and TKO pursuant to Section 32 of the Lanham Act (15 U.S.C. § 1114(1)), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and the common law of New York (counts 11 through 13).  Plaintiffs also assert claims against BAI and TKO for injury to business reputation and dilution, pursuant to Section 43 of the Lanham Act (15 U.S.C. § 1125(c)) and Section 360-1 of the New York General Business Law (count 14).  Defendants argue that to extent that these claims are brought on behalf of Iconix, they must be dismissed because Iconix is not the owner of the registered trademark and, therefore, lacks standing to assert said claims.  In its opposition, Iconix concedes that it is "neither the 'registrant' nor the owner" of the Bongo mark, and thus that it does not have standing to pursue its claims for trademark infringement under 15 U.S.C. § 1114(1), or for injury to business reputation or dilution under 15 U.S.C. § 1125(c) and has withdrawn these claims accordingly.[10]  Thus, all that remains to be decided is whether Iconix has standing to pursue its trademark infringement

---

[10] Plaintiff IPH continues to pursue its claims for trademark infringement under 15 U.S.C. § 1114(1) and for injury to business reputation or dilution under 15 U.S.C. § 1125(c). Defendants have not moved to dismiss these claims.

claims made pursuant to Section 43(a) of the Lanham Act and the common law of New York (counts 12 and 13).

Section 43(a) of the Lanham Act provides:

> Any person who, or in connection with any goods or services, or any container for goods or services, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). To establish standing under Section 43(a), a plaintiff must "demonstrate a 'reasonable interest to be protected' against the advertiser's false or misleading claims, and a 'reasonable basis' for believing that this interest is likely to be damaged by the false or misleading advertising." Havana Club Holding, S.A. v. Galleon S.A., 203 F.3d 116, 130 (2d Cir. 2000) (citation omitted). With regard to the "reasonable interest" prong, "[a]lthough a section 43 plaintiff need not be a direct competitor, it is apparent that, at a minimum, standing to bring a section 43 claim requires the potential for a commercial or competitive injury." Id. (citation omitted). The "reasonable basis" prong, by contrast,

"embodies a requirement that the plaintiff show both likely injury and a causal nexus to the false advertising." Id. (citation omitted).

As the parent company of IPH, the owner of the Licensed Mark, Iconix has both a general commercial interest and a direct pecuniary interest in the strength of the Bongo mark. In addition, plaintiffs have alleged that the Bongo mark is "widely recognized in the industry as originating with Iconix and IPH," and that the actions of the Defendants -- including sales of goods bearing the Bongo mark after the termination of the license agreements -- will cause and has caused damage to these interests. These allegations satisfy the standard outlined above. Accordingly, Defendants' motion to dismiss the trademark infringement claims made under Section 43(a) of the Lanham Act and the common law of New York is denied.[11]

E.  Motion to Strike Under Rule 12(f)

Finally, Defendants move to strike Paragraph 3 of plaintiffs' amended complaint pursuant to Rule 12(f) on the grounds that the allegations made therein are "immaterial and

---

[11] Defendants do not cite authority in support of their motion that specifically addresses plaintiffs' standing to pursue the common law claim, and instead rely on cases dealing with the federal statute. Thus, having rejected Defendants' Lanham Act argument, the motion to dismiss the common law claim will also be denied.

scandalous." Paragraph 3 of plaintiffs' amended complaint states:

> As the facts set forth below reveal, BAI's modus operandi is that it: (a) enters into contracts that it is either unable or unwilling to perform, (b) refuses to acknowledge that its failures are in breach of its obligations, (c) takes advantage of the chaos its breaches cause to Plaintiffs and the Licensed Mark to extract concessions relating to its obligations under the contracts, (d) fails to meet even reduced obligations, and (e) then seeks to terminate its agreements and walk away from its obligations. As a result of BAI's behavior, Iconix and IPH have suffered tremendous damage to the goodwill and reputation of the Licensed Mark, as well as significant economic damages, including decreased revenue, increased expenses, lost profits, and lost business opportunities.

Rule 12(f), Fed. R. Civ. P., permits the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In deciding a Rule 12(f) motion brought

> on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible. The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone. Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing.

Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976) (citation omitted).

Here, the Defendants have not provided a "strong reason" for striking Paragraph 3. Paragraph 3 is, in essence, a summary of the conduct alleged in the amended complaint; the only additional information conveyed by the text is that the plaintiffs believe that alleged conduct is typical of BAI. While that assertion clearly seeks to cast BAI in a negative light, it is not so "impertinent" or "scandalous" that it need be stricken under Rule 12(f).

CONCLUSION

Defendants' motion to dismiss, filed on March 28, 2008, is granted as to count 9, and denied in all other respects. Counts 11 and 14 have been withdrawn to the extent that they are alleged on behalf of Iconix.

SO ORDERED:

Dated: New York, New York
July 8, 2008

_____
DENISE COTE
United States District Judge